IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


RICHARD JACKSON,
aka Rick Jackson,

                Petitioner,

    vs.                                      CIVIL NO.  98-1302 JP/LFG

JOE WILLIAMS, Warden, Central
New Mexico Correctional Facility;
and ATTORNEY GENERAL FOR
THE STATE OF NEW MEXICO,

                Respondents.


## MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Findings

1.  This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed on October 19, 1998 [Doc. 1].  Respondents filed their answer, together with copies of the Record Proper on November 23, 1998 [Doc. 10].  Petitioner, Richard Jackson ("Jackson"), challenges the judgments and sentence entered by the Otero County District Court in State of New Mexico v. Richard "Rick" Jackson, Criminal Cause No. 96-142.  Jackson contends that a writ should issue because he was not tried within six months of his arraignment on the initial indictment issued.

2.  On September 14, 1995, in Criminal Cause No. 95-331, the Otero County Grand Jury

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

returned an indictment charging Jackson with two felony counts. Count I charged Jackson with intentionally transferring cocaine, a controlled substance, in violation of NMSA 1978 § 30-31-20(A)(2) [sic] a second-degree felony. Jackson was charged in Count II with the attempt to traffic cocaine by distribution, in violation of NMSA 1978 §§ 30-28-1 and 30-31-20(A)(2) [sic], a third-degree felony.

3. Jackson was arraigned on the two felony counts on September 15, 1995, and entered pleas of not guilty.

4. A jury trial in Cause No. 95-331 was set within the six-month time limit. However, a few weeks prior to the scheduled trial date, it was learned that two cassette tapes of grand jury proceedings, which were in the custody of the clerk of the court, were lost or misplaced. The district attorney was not in any way responsible for these tapes, nor did any act or omission on the part of the district attorney cause or contribute to the loss of the two cassettes.

5. On January 29, 1996, Jackson's attorney filed a motion to quash the grand jury indictment because of the State's inability to produce the two missing grand jury proceeding tapes.

6. Following a hearing on Jackson's motion to quash, the court found that the district attorney was not responsible for the loss of the tapes, but, rather, the tapes were misplaced while in the custody of the district court clerk. Nonetheless, because the tapes could not be located, the court quashed the indictment without prejudice.

7. On April 10, 1996, some twenty-three days after the order quashing the indictment, the district attorney filed a criminal information charging Jackson with the same crimes charged in Grand Jury Indictment No. 95-331.

8. Approximately thirty days after the filing of the criminal information, the court scheduled

a preliminary hearing. For a variety of reasons, including defense counsel's illness, missing witnesses, and docket congestion, the preliminary hearing was continued on several occasions and finally completed on July 12, 1996. The trial court found probable cause to believe that a crime was committed and probable cause to accuse Jackson of the commission of the crime. Accordingly, Jackson was bound over to stand trial on the charges in the criminal information.

9. Jackson was arraigned on the new charges on September 9, 1996, and his trial was scheduled within six months. Thus, the new trial date was within six months of his arraignment on the charges in the criminal information, but more than six months from his arraignment on the original indictment.

10. In early December, 1996, Jackson moved to dismiss the charges in the criminal information, alleging that his speedy trial rights were violated. The court denied the motion and proceeded to trial, and on December 19, 1996, a jury found Jackson guilty of all charges.

11. Jackson contends that nineteen months elapsed from the date of his arraignment on the charges in Criminal Cause 95-331 until the December 1996 trial in Criminal Cause No. 96-142. Contending that his speedy trial rights were violated, Jackson contends he should be released from prison.

12. When a court finds presumptive prejudice due to a speedy trial violation, the court should proceed with a Barker v. Wingo analysis. See 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). However, an analysis under Barker v. Wingo is not necessary when the court finds no violation of a speedy trial right.

13. Such is the case here. Jackson's trial in Cause No. 95-331 was scheduled to commence well within a six-month limit from his arraignment. Jackson did not wish to proceed to trial. Rather,

3

he sought dismissal of the indictment against him be quashed due to the missing cassettes. One ought not be heard to complain because the very relief he requested was granted. State v. Peterson, 103 N.M. 638, 642, 711 P.2d 915, 919 (Ct. App. 1985); see also Proper v. Mowry, 90 N.M. 710, 568 P.2d 236 (Ct. App. 1977).

14. Jackson's claims are similar to those raised in State v. Mayfield, 122 N.M. 298, 923 P.2d 1183 (Ct. App. 1996). In that case, Mayfield was indicted by a grand jury in November 1993 and charged with two counts of trafficking cocaine. Mayfield moved to dismiss the indictment, alleging that the true bill contained a signature of a jury foreman who was not present during the grand jury proceedings which culminated in Mayfield's indictment. To resolve the dispute concerning the propriety of the signature or date of the indictment, the State filed a *nolle prosequi* in December 1993. A *nolle prosequi* is a dismissal of criminal charges filed by a prosecutor, usually without prejudice. State v. Ware, 115 N.M. 339, 341, 850 P.2d 1042, 1044 (Ct. App. 1993). Thereafter, the prosecutor made a presentment of the same charges to a new grand jury, and the second grand jury returned an indictment in February 1994. Mayfield was arraigned on the new indictment and was scheduled to go to trial within six months from his arraignment on the second indictment.

15. Mayfield moved to dismiss the second indictment, arguing that he was not tried within six months of his arraignment on the initial indictment. The court rejected the claim, stating:

> A party must show that the State filed a *nolle prosequi* to circumvent the [six-month] rule, as opposed to simply remedying defects underlying the original indictment. Here, the record before us is devoid of any finding by the district court indicating that the motivation underlying the State's filing of the *nolle prosequi* was a desire to circumvent the six-month rule.

State v. Mayfield, 122 N.M. at 301, 923 P.2d at 1186.

4

16. In the present case, as in Mayfield, the trial court found that the State's action in initiating new criminal proceedings was in no way an attempt to circumvent the six-month rule. The new criminal proceedings were commenced only after Jackson successfully argued that the indictment should be quashed because grand jury tapes could not be located. The indictment was quashed at Jackson's insistence, but the order of dismissal was without prejudice to the State, meaning that new charges could be filed.

17. A federal court gives deference to factual determinations made by a state trial court. Boyd v. Ward, 179 F.3d 904, 912 (10th Cir. 1999). Here, the state court found, based on competent evidence, that the initiation of new charges was not an attempt to circumvent the six-month rule.

18. Because this Court finds no violation of the six-month rule, an analysis under Barker v. Wingo is not required. However, even if the Court were to consider the Barker v. Wingo factors, the result would be the same.

19. There was a delay of twenty-three days between the time the trial court quashed the indictment and the prosecutor filed a criminal information. That time is chargeable to the State. However, both parties agreed to the continuance of the preliminary hearings between May 23, 1996 and June 12, 1996. When a defendant concurs in a request for an extension, the time is not chargeable to the state. State v. McCroskey, 79 N.M. 502, 505, 445 P.2d 105, 108 (Ct. App. 1968). There was a subsequent one-month continuation of the preliminary hearing due to Jackson's counsel's illness. That time is not chargeable to the State. The record further reflects that an arraignment on the criminal information was delayed for ten days because Jackson refused to participate in the arraignment. That time is not chargeable to the State.

20. The record reflects that the trial was continued from October 15, 1996 to December 19,

1996. It appears that this was due to the court's own docket considerations. While docket congestion is a factor to consider in allocating responsibility for delay, it only weighs slightly against the State.

21. After deducting time chargeable to Jackson, and after consideration of time weighing against the State, there is no violation of Jackson's speedy trial right.

22. Jackson contends that he suffered emotional strain for an unacceptably long period of time. Salandre v. State, 111 N.M. 422, 430, 806 P.2d 562, 570 (1991). However, there is nothing extraordinary in the record which demonstrates that Jackson suffered any more or less strain than any other individual accused of criminal wrongdoing. Nor are Jackson's protestations convincing that the limitations on his travel prevented him from obtaining employment. There is no indication that Jackson sought to modify any conditions of release so as to allow him to seek employment elsewhere. Indeed, his conditions of release were revoked as a result of a separate incident involving Jackson's assault on a police officer. Thus, his continued incarceration pending trial was not necessarily related to the present case.

Finding no violations of Jackson's speedy trial rights, the Court recommends denial of his petition.

### Recommended Disposition

Dismissal of Jackson's petition for habeas corpus.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge

PETITIONER:
Richard Jackson, pro se
ATTORNEY FOR RESPONDENTS:
Elizabeth Major Blaisdell, Esq.